# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| BRIAN BREWER, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br>v.<br><br>DOBBERSTEIN LAW FIRM, LLC, and ALCO CAPITAL GROUP, LLC,<br><br>    Defendants. | Case No.: 20-cv-1244<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1. This action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA"), and the Wisconsin Consumer Act, Chs. 421- 427, Wis. Stats. (the "WCA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Brian Brewer is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from him a debt incurred for personal, family, or household purposes.

5. Plaintiff is also a "customer" as defined in the Wisconsin Consumer Act in that he engaged in a consumer transaction. Wis. Stat. § 421.301(17).

6. Defendant Dobberstein Law Firm, LLC ("Dobberstein") is a law firm with its principal place of business located at 225 South Executive Drive, Suite 201, Brookfield, Wisconsin 53005.

7. Dobberstein is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8. Dobberstein is engaged in the business of collecting debts owed to others and incurred for personal, family, or household purposes.

9. Dobberstein is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

10. Defendant ALCO Capital Group, LLC ("ALCO") is a Wisconsin limited liability company with its principal offices located at 225 South Executive Drive, Suite 200, Brookfield, Wisconsin 53005.

11. ALCO is engaged in the business of a collection agency, directly or indirectly using the mails and telephone to collect consumer debts originally owed to others.

12. The FDCPA defines a "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."

13. The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, *or* who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6) (emphasis added); *see, e.g., Barbato v. Greystone Alliance, LLC*, 916 F.3d 260, 267-68 (3d Cir.

2

Case 2:20-cv-01244-NJ    Filed 08/13/20    Page 2 of 20    Document 1

2019) ("As long as a business's raison d'être is obtaining payment on the debts that it acquires, it is a debt collector. Who actually obtains the payment or how they do so is of no moment."); *Tepper v. Amos Fin., LLC,* 898 F.3d 364, 371 (3d Cir. 2018) ("In sum, Amos may be one tough gazookus when it attempts to collect the defaulted debts it has purchased, but when its conduct crosses the lines prescribed by the FDCPA, it opens itself up to the Act's penalties."); *Kurtzman v. Nationstar Mortg. LLC*, No. 16 17236, 2017 U.S. App. LEXIS 19750, at *6-7 (11th Cir. Oct. 10, 2017); *McMahon v. LVNV Funding, LLC*, 301 F. Supp. 3d 866, 883 (N.D. Ill. 2018); *Long v. Pendrick Capital Partners II, LLC*, No. 17-cv-1955, 2019 U.S. Dist. LEXIS 44459, at *39-40 (D. Md. Mar. 18, 2019).

14. The primary purpose of ALCO's business, and ALCO's principal purpose, is the collection of consumer debts. *See, e.g.*, *Barbato*, 916 F.3d at 265; *Mitchell v. LVNV Funding, LLC*, No. 2:12-CV-523-TLS, 2017 U.S. Dist. LEXIS 206440 *16 (N.D. Ind. Dec. 15, 2017) ("'[t]here is no business purpose in purchasing charged off debts if the ultimate goal is not to collect them,' and that '[d]ebt buyers don't buy debts to use them as wallpaper, but to turn them into money'" (citing Pl.'s Reply Br.)).

15. ALCO is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103.

16. A company meeting the definition of "debt collector" is responsible for monitoring its servicing agents and ensuring that its servicing agents comply with the FDCPA and WCA, and may be held liable for any violations of a company collecting on its behalf. *See Janetos v. Fulton Friedman and Gullace, LLP*, 825 F.3d 317, 325 (7th Cir. 2016) ("A debt collector should not be able to avoid liability for unlawful debt collection practices simply by contracting with another company to do what the law does not allow it to do itself. Like the

3

Third Circuit, we think it is fair and consistent with the Act to require a debt collector who is independently obliged to comply with the Act to monitor the actions of those it enlists to collect debts on its behalf.").

**FACTS**

17. On or about September 5, 2007 Plaintiff was sued by an entity called "Resurgence Financial LLC" ("Resurgence Financial") in Milwaukee County, Circuit Court Case No. 2007cv10632 ("the State Court Action").

18. Upon information and belief, the alleged debt at issue in the State Court Action was a consumer credit debt incurred for personal, family, or household purposes.

19. Upon information and belief, Resurgence Financial sued thousands of consumer debtors using processes and forms virtually identical to the processes and forms used in the State Court Action. A CCAP search for "Resurgence Financial*" returns an error that the "query returned too many results." In September 2007 (*i.e.,* the month when the State Court Action was filed), Resurgence Financial filed 61 cases against consumer debtors.

20. Plaintiff was never served a summons for the State Court Action.

21. The CCAP docket for the State Court Action says that Resurgence Financial filed an Affidavit of Non-Service and Publication Summons.

22. On November 21, 2007, Resurgence Financial was granted default judgment, without Plaintiff's knowledge, in the State Court Action in the amount of $7,274.09, and was granted costs and disbursements in the amount of $437.50.

23. Resurgence Financial never attempted to collect the judgment.

24. Plaintiff was not served with notice of entry of the judgment.

25. No notice of entry of judgment was filed in the State Court Action. Upon information and belief, notice of entry of judgment was never mailed to Plaintiff.

26. More than a decade after the default judgment was entered in the State Court Action, on or about December 20, 2017, Defendant Dobberstein filed a "written request to convert" the case file to an electronic file.

27. On or about April 29, 2019, a "Notice of Retainer" was docketed in the State Court Action.

28. On or about May 9, 2019, a "Notice of Assignment of Judgment" was docketed in the State Court Action. A copy of the Notice of Assignment of Judgment and cover letter are attached to this Complaint as <u>Exhibit 1</u>.

29. The Notice of Assignment of Judgment that was docketed in the State Court Action states:

> NOW COMES the successor in interest to the plaintiff, Resurgence Financial LLC, by its attorneys, Dobberstein Law Firm, LLC, by Attorney Ashley M. Sanfilippo, who gives Notice that the above referenced Judgment has been assigned to ALCO Capital Group, LLC 225 S. EXECUTIVE DR. BROOKFIELD WI 53005. See Exhibit A, a duly acknowledged assignment of Judgment under Wis. Stat. 806.18(1). Also included is the $5.00 assignment fee required by Wis. Stat. 814.61(5)(b).

30. The document attached to <u>Exhibit 1</u> purporting to be the "duly acknowledged assignment of Judgment under Wis. Stat. 806.18)(1)" states:

> **FIRST RESOLUTION INVESTMENT CORPORATION**
>
> **BILL OF SALE**
>
> FIRST RESOLUTION INVESTMENT CORPORATION ("Seller"), for value received and in accordance with the terms of the Receivables Purchase Agreement, "), dated as of August 29, 2017 (the "Agreement"), by and between FIRST RESOLUTION INVESTMENT CORPORATION, on behalf of itself and its affiliates, and ALCO CAPITAL GROUP, LLC ("Purchaser") which is incorporated herein by reference, does hereby sell, assign, and transfer to Purchaser all of its good and marketable title, free and clean of all liens, claims and encumbrances in and to the Receivables listed in the Closing Statement attached as Exhibit A to the Agreement, without recourse and without representation or warranty of collectability, or otherwise, except to the extent stated in the Agreement.
>
> Effective as of August 29, 2017.

31. The "Notice" portion of Exhibit 1 states that the judgment in the State Court Action is a "duly acknowledged assignment of Judgment" to Defendant ALCO that is being filed by "successor in interest to the Plaintiff, Resurgence Financial LLC."

32. However, the "Bill of Sale" referenced in the Notice of Assignment of Judgement states that judgment was assigned "for value received and in accordance with" an agreement "by and between FIRST RESOLUTION INVESTMENT CORPORATION, on behalf of itself and its affiliates, and ALCO CAPITAL GROUP, LLC[.]"

33. There is no reference to "Plaintiff, Resurgence Financial LLC" in the "duly acknowledged assignment of Judgment" attached as "Exhibit A" to the Notice of Assignment of Judgment filed in the State Court Action.

34. The only reference to Resurgence Financial in Exhibit 1 is an Affidavit of "Michelle Hollon"[1] ("Affidavit of Hollon") which does not identify the connection between Hollon and Resurgence Financial, First Resolution Investment Corporation, and/or ALCO and is dated April 25, 2019, contemporaneously with Notice of Assignment of Judgment.

35. The Affidavit of Hollon, dated April 25, 2019, states that "Resurgence Financial LLC assigned the above judgment to First Resolution Investment Corporation" on or about October 21, 2010, almost a decade before the Affidavit of Hollon was prepared and sworn to.

36. The Affidavit of Hollon is not a record made at or near the time that the judgment was purportedly assigned from Resurgence Financial to First Resolution Investment Corporation.

37. The Affidavit of Hollon is not a record maintained in the ordinary course of business by Resurgence Financial LLC or First Resolution Investment Corporation.

38. Wis. Stat. § 806.18 ("Assignment of Judgment") states:

---

[1] As the handwriting in the Affidavit is difficult to read, it is unclear whether the affiant is named "Michelle Hollon" or "Michelle Hallon."

6

(1) When a duly acknowledged assignment of a judgment is filed, the clerk of circuit court shall enter the assignment on the judgment and lien docket.

(2) An assignment may be made by an entry on the judgment and lien docket thus: "I assign this judgment to A.B.", signed by the owner, with the date affixed and witnessed by the clerk of circuit court.

39. Neither the purportedly "duly acknowledged assignment of judgment" in Exhibit 1 nor the Affidavit of Hollon was "signed by the owner" of the judgment.

40. There was no "duly acknowledged assignment of judgment" in Exhibit 1.

41. Likewise, Wis. Stat. § 422.409 ("Notice of Assignment of Judgment"), which governs consumer credit transactions, states:

(1) The customer is authorized to pay the assignor until the customer receives notification of assignment of the rights to payment pursuant to a consumer credit transaction and that payment is to be made to the assignee. A notification which does not reasonably identify the rights assigned is ineffective. If requested by the customer, the assignee must seasonably furnish reasonable proof that the assignment has been made and unless the assignee does so the customer may pay the assignor.

(2) [. . .]

A provision in the assigned contract that the customer waives or will not assert claims or defenses against the assignee under s. 422.407(2) shall not be effective unless the notification of assignment also contains a clear and conspicuous statement that the customer has 12 months within which to notify the assignee in writing of any complaints, claims or defenses the customer may have against the assignor and that if the customer does not give such notice, the assignee or subsequent assignees will have the right to enforce the contract free of such claims or defenses subject to chs. 421 to 427.

42. To the best of Plaintiff's knowledge, Plaintiff has never received an assignment of judgment pursuant to Wis. Stat. § 422.409 stating that the account was assigned to First Resolution Investment Corporation.

43. On or about July 10, 2019, Meghan P. MacKelly, an attorney working for Dobberstein and ALCO signed an Affidavit to be filed in support of a Non-Earnings

7

Garnishment that Defendants Dobberstein and ALCO were preparing for filing in connection with the judgment referenced in Exhibit 1.

44. Defendants filed the Non-Earnings Garnishment against Plaintiff in the State Court Action on or about September 1, 2019. A copy of the Non-Earnings Garnishment and Affidavit of Meghan P. MacKelly that was filed in the State Court Action is attached to this Complaint as Exhibit 2.

45. The Affidavit of Meghan P. MacKelly in Exhibit 2 states, in part:

> judgment was duly rendered and entered in this action in favor of said Creditor, ALCO CAPITAL GROUP, LLC and against Debtor(s) Brian R Brewer on 11/26/2007, for $7,711.59 in the Circuit Court of Milwaukee County, State of Wisconsin; and this deponent further says there is due and unpaid upon said judgment, an amount of $18,474.07 plus the costs and disbursements of this action.

46. In fact, there was no judgment "duly rendered and entered" in ALCO's favor on November 26, 2007.

47. Further, the documents purporting to evidence an assignment of the judgment in favor of Resurgence Financial plainly do not satisfy the requirement under Wis. Stat. § 806.18(2) that the assignment be "signed by the owner."

48. Upon information and belief, Defendants do not have any contemporaneously prepared documents evidencing the purported assignment of the judgment from Resurgence Financial to First Resolution Investment Corporation and signed by any individual who was authorized to sign such a document on behalf of Resurgence Financial.

49. Upon information and belief, Defendants do not have any contemporaneously prepared documents evidencing the purported assignment of the judgment from Resurgence Financial to First Resolution Investment Corporation at all. Indeed, the only document that

8

Defendants included in Exhibit 1 was the Affidavit of Hollon, which was prepared more than a decade after the assignment purportedly occurred.

50. The representation that "judgment was duly rendered and entered" in favor of ALCO on or about November 26, 2007 is plainly false, deceptive, and misleading.

51. At minimum, the false statement that "judgment was duly rendered and entered" in favor of ALCO is a means of avoiding the additional time and effort that would be attendant to modifying the form language in the Affidavit of Meghan P. MacKelly and tracking down documentation that satisfied Wis. Stat. § 806.18(2).

52. Even assuming, *arguendo*, that Plaintiff's alleged debt was included in the portfolio of accounts that First Resolution Investment Corporation assigned to ALCO, there is no duly acknowledged assignment of the judgment from Resurgence Financial to First Resolution Investment Corporation.

53. Although the garnishment proceedings opened in connection with the Non-Earnings Garnishment that was filed on or about September 1, 2019 were dismissed, Defendants continue to represent that Plaintiff is indebted to ALCO and continue to attempt to collect the judgment rendered in the State Court Action from Plaintiff. Indeed, Defendants filed another Non-Earnings Garnishment proceeding against Plaintiff on or about June 11, 2020.

54. Even if First Resurgence did, in fact, assign the judgment to First Resolution Investment Corporation, who in turn assigned the judgment to Defendant ALCO, Defendants would still be barred by the doctrine of laches from collecting the alleged debt because First Resolution Investment Corporation did not attempt to collect the debt for more than a decade, indeed did not even file a Notice of Assignment in the State Court Action to advise that the judgment debt had been assigned from Resurgence Financial to First Resolution Investment

Corporation. *See Schafer v. Wegner*, 78 Wis. 2d 127, 254 N.W.2d 193 (1977) (The defendant was prejudiced by an unreasonable 16-year delay in bringing suit; thus laches barred suit even though the applicable limitation period did not.).

55. Upon information and belief, the Affidavit of Meghan P. MacKelly was drafted, sworn to, and filed without Meghan P. MacKelly ever becoming meaningfully involved in Plaintiff's file or meaningfully reviewing the information in the Affidavit of Meghan P. MacKelly. Indeed, any competent attorney who was meaningfully involved in Plaintiff's file or meaningfully reviewed the information in the Affidavit of Meghan P. MacKelley would have realized that: (i) the Affidavit of Meghan P. MacKelly would have required her to swear to and affirm false information (*i.e.*, that judgment was rendered in ALCO's favor), (ii) was filed in collection with an assignment of judgment that was not duly acknowledged by the actual judgment creditor and was not legally collectible by Defendants, and (iii) was being filed in connection with a claim that would have been barred by laches because it sat dormant for more than a decade after it was purportedly assigned to First Resolution Investment Corporation.

56. Upon information and belief, Defendants have used substantially identical forms in connection with hundreds or thousands of judgments originally obtained by Resurgence Financial. *See, e.g., Resurgence Financial LLC v. Timothy J. Baggett*, Kenosha Cnty. Case No. 2007sc3941, "Notice of Assignment of Judgment to ALCO Capital Group" *filed* April 9, 2015 (Kenosha Cnty. Cir. Ct.).

57. There was no order or finding in favor of Defendants in the State Court Action that Exhibit 1 was a duly acknowledged assignment of judgment because Wisconsin law does not specify a procedure for objecting to a bogus assignment of judgment nor does it instruct circuit courts to "look behind" the face of the notice of assignment itself. Instead, Wis. Stat.

10

§ 806.18 simply instructs that "the clerk of circuit court shall enter the assignment on the judgment and lien docket" upon the filing of a "duly acknowledged assignment of a judgment."

58. Moreover, because Wisconsin law does not specify a procedure for objecting to a notice of assignment, there was no reasonable opportunity for Plaintiff to raise the issue in the state court proceedings.

59. Plaintiff reviewed Exhibits 1 & 2.

60. Plaintiff was confused and misled by Exhibits 1 & 2.

### *The FDCPA*

61. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp. Solutions*, 2018 U.S. Dist. LEXIS 50016, *12, 2018 WL 1513043 (E.D. Wis. March 27, 2018); *Pogorzelski v. Messerli & Felix APC*, No. 16-C-1330, 2017 U.S. Dist. LEXIS 89678 *9 (E.D. Wis. June 12, 2017) ("A plaintiff who receives misinformation from a debt collector has suffered the type of injury the FDCPA was intended to protect against."); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after

11

*Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Long v. Fenton & McGarvey Law Firm P.S.C.*, 223 F. Supp. 3d 773, 777 (S.D. Ind. Dec. 9, 2016) ("While courts have found that violations of other statutes . . . do not create concrete injuries in fact, violations of the FDCPA are distinguishable from these other statutes and have been repeatedly found to establish concrete injuries."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

62. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

63. Misrepresentations of the character, amount or legal status of any debt, injure or risk injury to interests expressly protected by Congress in the FDCPA. *See Degroot v. Client Servs.,* 2020 U.S. Dist. LEXIS 6677 (E.D. Wis. Jan. 15, 2020) ("[A]n informational injury can be concrete when the plaintiff is entitled to receive and review substantive information."); *Oloko v. Receivable Recovery Servs.*, 2019 U.S. Dist. LEXIS 140164 (N.D. Ill. Aug. 19, 2019); *Untershine v. Encore Receivable Mgmt., Inc.*, 18-cv-1484 (E.D. Wis. August 9, 2019); *Richardson v. Diversified Consultants*, No. 17-cv-4047, 2019 U.S. Dist. LEXIS 118786 *10-11 (N.D. Ill. July 17, 2019) ("the receipt of a communication misrepresenting the character of the debt (here, the amount owed) is the kind of injury that Congress sought to prevent through the FDCPA. 'Such an injury falls squarely within the ambit of what Congress gave consumers in the FDCPA: 'a legally protected interest in certain information about debts,' with 'deprivation of information about one's debt (in a communication directed to the plaintiff consumer) a cognizable injury.'" (internal citations omitted); *see also Pierre v. Midland Credit Mgmt., Inc.*, 2017 WL 1427070, at *4 (N.D. Ill. Apr. 21, 2017); *Saenz v. Buckeye Check Cashing of Illinois*, 2016 WL 5080747, at *1-2 (N.D. Ill. Sept. 20, 2016); *Bernal v. NRA Grp., LLC*, 318 F.R.D. 64, 72 (N.D. Ill. 2016) (holding that Plaintiff had standing to challenge misleading communication

sent to him because the communication violated his "right to be free from such misleading communications"). Such misrepresentations may cause consumers to make incorrect decisions about their finances or make payments to incorrect parties.

64. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

65. 15 U.S.C. § 1692e(2)(a) specifically prohibits "the false representation of—the character, amount, or legal status of any debt."

66. 15 U.S.C. § 1692e(3) specifically prohibits "the false representation or implication that any individual is an attorney or that any communication is from an attorney."

67. 15 U.S.C. § 1692e(3) specifically prohibits "the use or distribution of any written communication . . . which creates a false impression as to its source, authorization, or approval."

68. 15 U.S.C. § 1692e(4) specifically prohibits "the representation or implication that nonpayment of any debt will result in the … garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action."

69. 15 U.S.C. § 1692e(5) specifically prohibits "the threat to take any action that cannot legally be taken or that is not intended to be taken."

70. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

71. 15 U.S.C. § 1692e(12) specifically prohibits "the false representation or implication that accounts have been turned over to innocent purchasers for value."

72. 15 U.S.C. § 1692f generally prohibits "unfair or unconscionable means to collect or attempt to collect any debt."

73. 15 U.S.C. § 1692f(1) specifically prohibits "The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

74. 15 U.S.C. § 1692g(a)(1) requires that the debt collector provide an accurate statement of "the amount of the debt" in the first written communication to the consumer.

### *The WCA*

75. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

76. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n**.**15, 596 N.W.2d 786 (1999) (citations omitted).

77. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

78. "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

79. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

80. The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

81. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

82. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

83. The WCA specifically allows a person to recover punitive damages "in appropriate cases." Wis. Stat. § 425.301(1); *Gonzales v. Kohn Law Firm, S.C.*, No. 13-CV-168, 2014 U.S. Dist. LEXIS 6750*10 (E.D. Wis. Jan. 17, 2014).

84. Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct which can reasonably be expected to threaten or harass the customer or a person related to the customer."

16

Case 2:20-cv-01244-NJ    Filed 08/13/20    Page 16 of 20    Document 1

85. Wis. Stat. § 427.104(1)(j) states that a debt collector may not "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

86. Wis. Stat. § 427.104(1)(k) states that a debt collector may not "Use a communication . . . which gives the appearance of being authorized, issued, or approved by a government, governmental agency or attorney-at-law when it is not."

## COUNT I – FDCPA

87. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

88. Count I is brought against all Defendants.

89. The Affidavit of Meghan P. MacKelly falsely states that judgment was rendered in ALCO's favor.

90. The Affidavit of Meghan P. MacKelly was filed in connection with an unlawful attempt to garnish Plaintiff in collecting a debt based on an assignment of judgment that was not duly acknowledged by the actual judgment creditor.

91. The Affidavit of Meghan P. MacKelly was being filed in connection with a claim that would have been barred by laches because it sat dormant for more than a decade after it was purportedly assigned to First Resolution Investment Corporation.

92. Defendants violated 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(3), 1692e(4), 1692e(5), 1692e(9), 1692e(10), 1692f, 1692f(1), and 1692g(a).

## COUNT II – WCA

93. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

94. Count II is brought against all Defendants.

17

95. The Affidavit of Meghan P. MacKelly falsely states that judgment was rendered in ALCO's favor.

96. The Affidavit of Meghan P. MacKelly was filed in connection with an unlawful attempt to garnish Plaintiff in collecting a debt based on an assignment of judgment that was not duly acknowledged by the actual judgment creditor.

97. The Affidavit of Meghan P. MacKelly was being filed in connection with a claim that would have been barred by laches because it sat dormant for more than a decade after it was purportedly assigned to First Resolution Investment Corporation.

98. Defendants violated Wis. Stat. §§ 427.104(1)(h) and 427.104(1)(j).

99. Plaintiff and all Class members are also entitled to and do seek injunctive relief prohibiting the fraudulent collection of void judgments in the future.

100. Plaintiff and all Class members also seek punitive damages for defendants' outrageous conduct.

## CLASS ALLEGATIONS

101. Plaintiff brings this action on behalf of a Class, consisting of:

(a) all natural persons in the State of Wisconsin (b) from whom Defendants attempted to collect a debt, (c) in which default judgment was entered in favor of Resurgence Financial between January 1, 2001 and March 25, 2009, (d) and in connection with such debt Defendants initiated garnishment proceedings between August 29, 2017 and August 10, 2020, inclusive, (e) where Defendants used a Notice of Assignment of Judgment that was substantially identical in form to the Notice of Assignment of Judgment that was used in the State Court Action and (f) purported to evidence assignment of the judgment from Resurgence Financial to ALCO through an intermediary corporation, and (g) the "duly acknowledged assignment of judgment" was not signed by the judgment creditor. Excluded from the class are any individuals who obtained the underlying debt exclusively for business purposes.

102. The Class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of the Class.

103. There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether Defendants' efforts to collect on an invalid judgment based upon a false assignment of judgment and fraudulent affidavit are in violation of the FDCPA and/or the WCA.

104. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

105. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

106. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

107. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and against Defendants for:

(a) actual damages;

(b) statutory damages;

(c) injunctive relief;

(d) punitive damages;

(e) attorneys' fees, litigation expenses and costs of suit; and

(f) such other or further relief as the Court deems proper.

Dated: August 13, 2020

                              **ADEMI & O'REILLY, LLP**

                By:    /s/ Mark A. Eldridge
                        John D. Blythin (SBN 1046105)
                        Mark A. Eldridge (SBN 1089944)
                        Jesse Fruchter (SBN 1097673)
                        Ben J. Slatky (SBN 1106892)
                        3620 East Layton Avenue
                        Cudahy, WI 53110
                        (414) 482-8000
                        (414) 482-8001 (fax)
                        jblythin@ademilaw.com
                        meldridge@ademilaw.com
                        jfruchter@ademilaw.com
                        bslatky@ademilaw.com